[Cite as *Crum & Forster Indemn. Co. v. Ameritemps, Inc.*, 2012-Ohio-4160.]

# Court of Appeals of Ohio

## EIGHTH APPELLATE DISTRICT
## COUNTY OF CUYAHOGA

JOURNAL ENTRY AND OPINION
**No. 97843**

# CRUM & FORSTER INDEMNITY CO.

PLAINTIFF-APPELLEE

vs.

# AMERITEMPS, INC. A.K.A. EXTINCT TEMPS

DEFENDANT-APPELLANT

## JUDGMENT:
## AFFIRMED

Civil Appeal from the
Cuyahoga County Court of Common Pleas
Case No. CV-686166

**BEFORE:** Kilbane, J., Boyle, P.J., and Cooney, J.

**RELEASED AND JOURNALIZED:** September 13, 2012

**ATTORNEY FOR APPELLANT**

L. Terrence Ufholz
Corsin, Sanislo & Ufholz, LLC
304 N. Cleveland-Massillon Road
Commonwealth Square
Akron, Ohio 44333

**ATTORNEYS FOR APPELLEES**

**For Crum & Forster Indemnity**

Gary W. Johnson
John L. Antel
Brandon M. Fairless
Weston Hurd, LLP
The Tower at Erieview
1301 East Ninth Street - Suite 1900
Cleveland, Ohio 44114

**For National Union Fire Insurance Co.**

Steven G. Janik
Crystal L. Maluchnik
Janik LLP
9200 South Hills Boulevard
Suite 300
Cleveland, Ohio 44147-3521

MARY EILEEN KILBANE, J.:

{¶1} Defendant-appellant, Ameritemps, Inc., a.k.a. Extinct Temps, Inc. ("Ameritemps"), appeals from the order of the trial court that awarded summary judgment to plaintiff Crum & Forster Indemnity Co. ("Crum & Forster"), in Crum & Forster's declaratory judgment action concerning its obligation to defend and indemnify under a commercial auto liability policy. For the reasons set forth below, we affirm.

{¶2} This case arises out of the October 11, 2006 motor vehicle accident involving Raymond Kestranek and defendant Kevin Crosby who traveled left of center and struck Kestranek's vehicle. At the time of the accident, Crosby, and his passengers Tabious Harris, Calin Tucker, and Joe Wimbley, were all employed by Ameritemps as temporary employees. *Kestranek v. Crosby*, 8th Dist. No. 93163, 2010-Ohio-1208, ¶ 5. They were in Crosby's "own personal vehicle" and were en route to Prime Woodcraft, a job site in Garettsville, Ohio. *Id*. at ¶ 6. Following the accident, the Kestraneks filed suit against Ameritemps and various other parties and alleged, inter alia, that Ameritemps was vicariously liable for the negligent acts of its employee under a theory of respondeat superior. *Id*. at ¶ 11. The trial court found that Crosby was not in the course and scope of his employment at the time of the accident as a matter of law, and awarded Ameritemps summary judgment. *Id*. at ¶ 13.

**{¶3}** On appeal, this court reversed and remanded, concluding that:

The record reveals that Crosby was not only transporting himself but three other individuals to the client's location, Prime Woodcraft, providing labor on behalf of Ameritemps, his employer. The record also contains testimony that Ameritemps required Harris and Tucker to drive with Crosby from Ameritemps' dispatch office and that Ameritemps stopped providing a van once Crosby started driving. The record further reveals that Ameritemps transferred money from the paychecks of those employees who rode with Crosby to Crosby's paycheck to compensate him for driving. Although Ameritemps characterizes its policy as a "mere favor" done for its employee, a conflicting inference can be made: Ameritemps transferred the money because it wanted Crosby to drive the other temporary employees in furtherance of its business. And while Ameritemps attempts to distance itself from its employees' practice of riding together from the dispatch office, reasonable minds could find that they facilitated and promoted this arrangement. Indeed, an inference can be made that Ameritemps required Crosby to drive the other employees. Construing this evidence in a light most favorable to the Kestraneks, and given the conflicting inferences that can be drawn from the undisputed facts, we find that Ameritemps is not entitled to judgment as a matter of law.

*Id.* at ¶ 32.

**{¶4}** This court rejected Kestraneks' request to find that Crosby was within the course and scope of his employment as a matter of law, noting that the Kestraneks did not move for summary judgment on that basis and that a reviewing court "cannot provide a party with relief that they did not first seek below." *Id*. at ¶ 33.

**{¶5}** Harris and Tucker received workers' compensation benefits in connection with the collision. They also filed actions against Ameritemps alleging that Crosby was in the course and scope of his employment with Ameritemps at the time of the accident, that Ameritemps is vicariously liable for Crosby's negligence, and that Ameritemps negligently entrusted or hired Crosby to drive them to the work site. On February 27, 2009, Crum & Forster filed a declaratory judgment action seeking a determination of its duty to defend and indemnify under a commercial auto liability policy issued to Ameritemps.[1]

**{¶6}** In relevant part, the policy provided:

SECTION I - COVERED AUTOS

Description of Covered Auto * * *

* * * Only those "autos" you own * * *

* * * Only those "autos" you lease, hire, rent, or borrow. This does not include any "auto" you lease, hire, rent, or borrow from one of your "employees" * * *

SECTION II- LIABILITY COVERAGE

---

[1]A second insurer, National Union Fire Insurance Company of Pittsburgh was granted leave to intervene but it is not participating in this appeal.

* * *

Who Is An Insured

The following are "insureds":

a.  You for any "covered auto"

b.  Anyone else while using with your permission a covered "auto" you own, hire or borrow except:

(1) The owner or anyone else from whom you hire or borrow a covered "auto." * * *

(2) Your "employee" if the covered "auto" is owned by that "employee" or a member of his or her household. * * *

Exclusions

* * *

3.  Workers' Compensation

Any obligation for which the "insured" or the "insured's" insurer may be held liable under any workers' compensation, disability benefits or unemployment compensation law or any similar law.

4. Employee Indemnification And Employer's Liability

"Bodily injury" to:

(a) An "employee" of the "insured" arising out of and in the course of:

(1) Employment by the "insured"; * * *

SECTION V - DEFINITIONS

* * *

F.  "Employee" does not include a "temporary worker."

* * *

O. "Temporary worker" means a person who is furnished to you to substitute for a permanent "employee" on leave or to meet seasonal or short-term workload conditions.

**{¶7}** On December 20, 2010, Crum & Forster filed a motion for summary judgment. Crum & Forster argued that the policy provided coverage for eight "hired" autos, defined as "those 'autos' you lease, hire, rent, or borrow. This does not include any 'auto' you lease, hire, rent, or borrow from any of your 'employees' * * *." Crum & Forster additionally argued that under the exclusions to liability, there is no coverage for "any obligation for which the 'insured' or the 'insured's' insurer may be held liable under any worker's compensation * * * or similar law," and no coverage for bodily injury to an "'employee' of the 'insured' arising out of and in the course of '[e]mployment by the "insured"; or [p]erforming the duties related to the conduct of the "insured's" business[.]'"

**{¶8}** On December 23, 2011, the trial court granted Crum & Forster's motion for summary judgment and determined that Crum & Forster was not required to provide a defense or indemnification in the lawsuits arising from the October 11, 2006 motor vehicle accident caused by Crosby.

**{¶9}** Ameritemps now appeals and assigns the following error for our review:

The trial court should not have granted summary judgment because issues of material fact exist to be determined by a jury.

**{¶10}** Within this assignment of error, Ameritemps argues that there are genuine issues of material fact as to whether Crosby's vehicle was a hired auto under the policy because Ameritemps' standard practice was to deduct $5 from each passenger for a ride. Ameritemps additionally argues that there are genuine issues of material fact as to whether Crosby was a temporary worker, and whether he had a fixed situs of employment, and therefore not subject to the exclusion for "employees." Ameritemps maintains that the Tucker, Harris, and Kestranek claims are potentially or arguably within the policy coverage so Crum & Forster must provide a defense in each of these actions.

*Summary Judgment*

**{¶11}** A reviewing court reviews an award of summary judgment de novo. *Grafton v. Ohio Edison Co.*, 77 Ohio St.3d 102, 105, 1996-Ohio-336, 671 N.E.2d 241; *Mitnaul v. Fairmount Presbyterian Church*, 149 Ohio App.3d 769, 2002-Ohio-5833, 778 N.E.2d 1093 (8th Dist.). Therefore, this court applies the same standard as the trial court, viewing the facts in the case in the light most favorable to the nonmoving party and resolving any doubt in favor of the nonmoving party. *Viock v. Stowe-Woodward Co.*, 13 Ohio App.3d 7, 12, 467 N.E.2d 1378 (6th Dist.1983).

**{¶12}** Summary judgment is proper if:

> (1) No genuine issue as to any material fact remains to be litigated; (2) the moving party is entitled to judgment as a matter of law; and (3) it appears from the evidence that reasonable minds can come to but one conclusion, and viewing such evidence most strongly in favor of the party against whom the motion for summary judgment is made, that conclusion is adverse to that party.

*Temple v. Wean United, Inc.*, 50 Ohio St.2d 317, 327, 364 N.E.2d 267 (1977).

**{¶13}** Once a moving party satisfies its burden of supporting its motion for summary judgment with sufficient and acceptable evidence pursuant to Civ.R. 56(C), the nonmoving party must set forth specific facts, demonstrating that a "genuine triable issue" exists to be litigated for trial. *State ex rel. Zimmerman v. Tompkins*, 75 Ohio St.3d 447, 449, 1996-Ohio-211, 663 N.E.2d 639.

*Duty to Defend*

**{¶14}** An insurance policy is a contract between the insurer and the insured. *Ward v. United Foundries, Inc.*, 129 Ohio St.3d 292, 2011-Ohio-3176, 951 N.E.2d 770, ¶ 18, citing *Pilkington N. Am., Inc. v. Travelers Cas. & Sur. Co.*, 112 Ohio St.3d 482, 2006-Ohio-6551, 861 N.E.2d 121, ¶ 23. If a court must interpret a provision in the policy, it looks "to the policy language and relies on the plain and ordinary meaning of the words used to ascertain the intent of the parties to the contract." *Id.*, citing *Penn Traffic Co. v. AIU Ins. Co.*, 99 Ohio St.3d 227, 2003-Ohio-3373, 790 N.E.2d 1199, ¶ 9, and *Cincinnati Ins. Co. v. CPS Holdings, Inc.*, 115 Ohio St.3d 306, 2007-Ohio-4917, 875 N.E.2d 31, ¶ 7.

**{¶15}** An insurer's duty to defend is broader than and distinct from its duty to indemnify. *Ohio Govt. Risk Mgt. Plan v. Harrison*, 115 Ohio St.3d 241, 2007-Ohio-4948, 874 N.E.2d 1155, ¶ 19. The scope of the allegations in the complaint against the insured determines whether an insurance company has a duty to defend the insured. *Id.* The insurer must defend the insured in an action when the allegations state a claim that potentially or arguably falls within the liability insurance coverage, but the

insurer need not defend any action or claims within the complaint when all the claims are clearly and indisputably outside the contracted coverage. *Id.*

{¶16} In this matter, upon de novo review, we conclude that there are no genuine issues of material fact and that Crum & Forster is entitled to judgment as a matter of law because the claims arising from the Crosby accident are clearly and indisputably outside of the contracted policy coverage.

{¶17} Under the plain language of the Crum & Forster policy, the claims do not involve a "covered auto," Ameritemps is not an insured in this matter, and the workers' compensation and scope of employment exclusions operate to bar recovery herein. Ameritemps notes that according to the testimony of Tabious Harris, Ameritemps' standard practice was to deduct $5 from each passenger for a ride. Ameritemps therefore asserts that there is a genuine issue of material fact as to whether the claims potentially or arguably involve a covered hired auto. In its responses to Crum & Forster's request for admissions, however, Ameritemps admitted that it "did not own" the vehicle involved in the October 11, 2006 collision, that it "was not leased[,]" "was not rented[,]" and "was not borrowed" by Ameritemps, so it does not meet the definition of a "covered auto." *Accord Westfield Ins. Co. v. Hogue*, 4th Dist. No. 03CA20, 2003-Ohio-5405.

{¶18} Further, the record indicates that Crosby was transporting himself, Harris, Tucker, and Wimbley to provide labor for Ameritemps' client, Prime Woodcraft. The record indicates that they were not in a "covered auto" but were instead in an auto hired or borrowed from an employee and, therefore, subject to the exception to the definition of

"covered autos" pertaining to vehicles borrowed from employees. The record indicates that Ameritemps generally provides its workers with transportation to the job site, unless a worker has his or her own transportation. According to the deposition of Phillip DeRosa of Ameritemps, other co-workers going to the same job site were permitted to carpool in the employee's vehicle, and in this instance Ameritemps:

> Let the employees know, "hey, this guy may ask you for gas money. If you have gas money, great. You know, if he asks for it, you need to give him some gas money. If not, we'll transport you in our own vehicles. That's not a problem." The temporaries, at that time, they can either give him what he's asking for gas or they'll come up and ask us, "Hey, is there any way that you can transfer the money from my check to his check?"

> So, in essence, no, we're not paying him. The temporaries that were riding with him are still paying him [from funds transferred by Ameritemps].

{¶19} Accordingly, the claim arising from the collision involving this vehicle clearly and indisputably does not involve a covered auto under the exception for vehicles borrowed or hired from employees. *Accord Hogue.*

{¶20} The record additionally indicates that Harris received $84,714 in workers' compensation benefits following the collision, and Tucker received $4,932. Recovery is therefore barred by the policy exclusion for "any obligation for which the 'insured' or the 'insured's' insurer may be held liable under any worker's compensation * * * or similar law," so the claim is not arguably or potentially within the policy coverage. *Accord Sharp v. Thompson,* 5th Dist. No. 07CA00016, 2008-Ohio-4990 (no dispute of material fact; no duty to defend where the claim is barred by identical workers' compensation exclusion and is therefore clearly outside the scope of the policy coverage); *Westfield v.*

*Malvern*, 7th Dist. Nos. 633, 634, 1994 LEXIS 4029 (Sept. 12, 1994) (no duty to defend where the claim is barred by workers' compensation exclusion).

**{¶21}** Finally, there is no coverage for bodily injury to an "'employee' of the 'insured' arising out of and in the course of '[e]mployment by the "insured"; or [p]erforming the duties related to the conduct of the "insured's" business[.']" Although Ameritemps insists that there are genuine issues of material fact as to whether Crosby was a temporary employee with a fixed situs of employment, in the prior appeal, this court found that "the record does not support the trial court's conclusion that Crosby was not in the course and scope of his employment as a matter of law" and also rejected the argument that Crosby was a fixed-situs employee. In addition, he does not meet the definition of a temporary worker as he was not furnished to Ameritemps to substitute for a permanent "employee" on leave or to meet seasonal or short-term workload conditions. Rather, he was an Ameritemps employee furnished to Ameritemps' clients. By operation of this language, the claim is not arguably or potentially within the policy coverage.

**{¶22}** In accordance with all of the foregoing, the trial court properly concluded that there are no genuine issues of material fact, that Crum & Forster has no duty to provide a defense or indemnity of the claims from the October 11, 2006 motor vehicle collision and is entitled to judgment as a matter of law.

**{¶23}** Judgment affirmed.

It is ordered that appellee recover from appellant costs herein taxed.

It is ordered that a special mandate be sent to said court to carry this judgment into execution.

A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.

_____

MARY EILEEN KILBANE, JUDGE

MARY J. BOYLE, P.J., and
COLLEEN CONWAY COONEY, J., CONCUR